IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 2015 C 10323 |
| THE E COMPANY, a dissolved Illinois corporation, T & W EDMIER CORP, a dissolved Illinois corporation, EDMIER CORP, an Illinois corporation K. EDMIER & SONS, LLC, an Illinois limited liability company, THOMAS W. EDMIER, individually, | ) ) ) ) ) ) ) ) ) ) | Judge Durkin<br><br>Magistrate Finnegan |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT AGAINST ALL CONTROL GROUP MEMBERS**

NOW COMES the Plaintiff, TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, pursuant to FRCP 56 and L.R. 56.1(a)(3), and move for the entry of summary judgment against THE E COMPANY, a dissolved Illinois Corporation, T & W EDMIER CORP., a dissolved Illinois corporation, EDMIER CORP., an Illinois corporation, K. EDMIER & SONS, LLC, an Illinois limited liability company, and THOMAS W. EDMIER, individually and other control group members, William Edmier, Individually, The William Edmier Trust, E & E Equipment & Leasing, Inc. and Lake Street Realty, Inc. (hereafter "Edmier") as to liability and damages pursuant to 29 U.S.C. 1401(b) which provides:

(1) If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

In support of its Motion, Plaintiff submits the following Memorandum of Law. (Plaintiff's Statement of Uncontested Facts is referenced as (L. R. 56.1 ¶ __).)

1

## STATEMENT OF FACTS

The Plaintiff ("Fund") is a multiemployer pension plan within the meaning of Section 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). (Colin Affidavit ¶2) The Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements on behalf of employees of the participating employers. The Fund is administered at 1171 Commerce Drive, West Chicago, Illinois. (L. R. 56.1 ¶2) All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Fund and paying the administrative expenses of the Fund. (L. R. 56.1 ¶ 4)

Defendant T & W Edmier Corp. was an Illinois corporation and was engaged in an industry affecting commerce. (L. R. 56.1 ¶8) T & W Edmier Corp. was subject to a collective bargaining agreement between itself and Teamsters Local 673 requiring T & W Edmier Corp. to make contributions to the Fund on behalf of certain of its employees. (L. R. 56.1 ¶7) From at least September 16, 1993 and into the year ending December 31, 2014, Edmier employed persons represented for collective bargaining by Teamsters Local 673, whose members participate in the Fund, and made pension contributions for those employees, as called for in the collective bargaining agreement. (L. R. 56.1 ¶23, 49) owned jointly by William and Thomas Edmier. . (L. R. 56.1 ¶5, 29)

Defendant The E Company was an Illinois corporation and was engaged in an industry affecting commerce. (L. R. 56.1 ¶8) The E Company was subject to a collective bargaining agreement between itself and Teamsters Local 673 requiring The E Company to make contributions to the Fund on behalf of certain of its employees. (L. R. 56.1 ¶7, 35-38) From at least May, 2009 and into the year ending December 31, 2014, The E Company employed persons represented for collective bargaining by Teamsters Local 673, whose members participate in the Fund, and made pension contributions for those employees, as called for in the collective

bargaining agreement. (L. R. 56.1 ¶23, 49) Additionally, the letter of agreement signed by The E Company states that it incorporates the agreement with T & W Edmier Corp., and that The E Company jointly shares a seniority list of employees with T & W Edmier Corp. (L. R. 56.1 ¶35-38; Colin Affidavit Exhibit 2)

T & W Edmier Corp. is owned by Thomas W. Edmier (the individual Defendant) and his brother, William Edmier. (L. R. 56.1 ¶5, 29) The E Company, the joint signatory withdrawing company, is owned by Kevin Edmier. (L. R. 56.1 ¶8; 35-38) Edmier Corp. was owned exclusively by William Edmier. (L. R. 56.1 ¶18) Kevin Edmier is the only member of K. Edmier and Sons, LLC. (L. R. 56.1 ¶17) The control group members are all family. (L. R. 56.1 ¶14) Thomas and William are brothers, and William is Kevin's father. (L. R. 56.1 ¶29) T & W Edmier Corp., The E Company, Edmier Corp., K. Edmier and Sons, LLC, Thomas W. Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc. and E & E Equipment & Leasing, Inc. (collectively "Edmier") constitute the Edmier Control Group. (L. R. 56.1 ¶5) and Thomas and William Edmier, Individually because of their ownership of real estate leased to the withdrawing employer, The E Company/T & W Edmier Corp. and to Lake Street Realty, Inc. (L. R. 56.1 ¶9, 11)

Thomas W. Edmier, Individually and William L. Edmier, Individually are Trustees under the July 24, 1995 Trust Agreement creating the William Edmier Trust. Each own 50% of the real estate located at 249 W. Lake Street, Elmhurst, Illinois. William Edmier is the President of Lake Street Realty, Inc. Mr. Grumley, its Registered Agent. (L. R. 56.1 ¶9, 11)

T & W Edmier Corp. and The E Company closed and did not employ any persons engaged in operations requiring contributions to the Fund after 2014. (L. R. 56.1 ¶7) As a result, T & W Edmier Corp. and The E Company did not contribute to the Fund on behalf of its employees for work performed after 2014. (L. R. 56.1 ¶8; 20) Because of these facts, T & W Edmier Corp. and The E Company permanently ceased to have an obligation to contribute under

3

the plan.

On April 30, 2015, Fund Manager Jose M. Colin, on behalf of the Trustees, mailed the T & W Edmier Corp. and The E Company a letter stating that, pursuant to ERISA, the trustees, the plan's sponsor was notifying the Edmier Control Group of the amount of withdrawal liability that it had incurred due to the cessation of its obligations to contribute to the Fund. (L.R. 56.1 ¶41). Receipt is acknowledged by Defendants. (L. R. 56.1 ¶27, 28) Specifically, the letter stated that Edmier had incurred $654,724.00 in withdrawal liability. (L. R. 56.1 ¶41) The letter also stated that Edmier's quarterly payment schedule required a quarterly payment of $41,820.50 due on May 15, 2015, sixteen further quarterly payments of the same amount, and a final payment of $28,185.93 due on August 15, 2019. (L. R. 56.1 ¶41) Further, the letter stated that failure to make any payment when due would make the entire balance immediately due and payable. (L. R. 56.1 ¶41) The letter also notified Edmier of ERISA Sections 4219 and 4221 for a description of rights it might have in connection with the assessment of withdrawal liability. (L. R. 56.1 ¶41)

No withdrawing company or control group member requested a review of the withdrawal liability within 90 days of receipt of the April 30, 2015 letter, nor did it at any time request arbitration of its dispute with the Fund. (L. R. 56.1 ¶30, 46, 47) The amount of withdrawal liability, and the payment schedule, were calculated by the Fund's actuary, using the presumptive allocation method, allowed for under Section 4211(b) of ERISA, 29 U.S.C. § 1391. (L. R. 56.1 ¶21). No payments were ever made.

Edmier Defendants admit they have never made any withdrawal liability payments to the Fund, requested review or sought arbitration. (L. R. 56.1 ¶30) On August 17, 2015, Mr. Colin notified the Edmier Defendants they failed to make its first payment due May 15, 2015, and was therefore in default (L. R. 56.1 ¶42). On November 12, 2017 counsel for the Trustees, notified Edmier Defendants that the May 15, 2015 payment was overdue (L. R. 56.1 ¶44) and payment of the debt was accelerated and the full amount was now due. (L. R. 56.1 ¶45).

4

To this day no Edmier Control Group Defendants or members have made any payments toward withdrawal liability. (L. R. 56.1 ¶47) Because of its default, Plaintiff brought suit to collect the entire amount of withdrawal liability as is their duty under the law as set forth in 29 U.S.C. 1 401(b)(1); L. R. 56.1 ¶48).

## ARGUMENT

Plaintiff will show as a matter of law that Edmier has incurred withdrawal liability and has waived its defenses by not requesting arbitration of the imposition of withdrawal liability. <u>Robbins v. Chapman Trucking, Inc.</u>, 866 F.3d 899, 902 (7th Cir. 1988). The waiver of defenses applies to the entire control group. *IAM Pension Fund v. Slyman Industries*, 825 F.2d 415 (D.C. Cir. 1990). In addition, Plaintiff complied with all requirements under the law to give notice to Edmier Defendants of its withdrawal liability, 29 U.S.C. 1399. (L. R. 56.1 ¶41-46) Courts hold notice to one employer within the control group is notice to all members of the control group. *Central States v. Slotky*, 956 F.2d 1369 (7th Cir. 1992). Edmier has defaulted in its payment of withdrawal liability, that Plaintiff met with all requirements under the law to give notice to Edmier of its default in payment of its withdrawal liability, and that because of Edmier's default the entire amount of withdrawal liability, plus applicable interest, costs, and attorneys fees, are due to Plaintiff, 29 U.S.C. 1132(g)(2). (L. R. 56.1 ¶46-48)

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Kamler v. H/N Telcom. Servs., Inc.*, 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fritcher v. Health Care Servs. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002).

5

The movant bears the burden of establishing that no genuine issue of material fact exits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); *Celotex*, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *see also Anderson*, 477 U.S. at 250.

## II. ANALYSIS

A. **The Fund is Entitled to Summary Judgment Because the Fund Determined the Amount of Withdrawal Liability, and a Payment Plan Thereto, the Fund Gave Proper Notice, and Edmier did not Request Arbitration**

   1. **Edmier effectuated a complete withdrawal when it ceased to employ workers covered by the plan and the closing of its business**

Under the Employee Retirement Income Security Act ("ERISA") and the Multiemployer Pension Plan Amendments Act ("MPPAA"), an employer who effectuates a complete withdrawal from a multiemployer pension plan "is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. Edmier completely withdrew from the Fund by the end of 2014. (L. R. 56.1 ¶21, 23)

> "In doing so both requirements of 29 U.S.C. § 1383 were met: "[A] complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

For these purposes, the "employer" includes all trades or business under common control. ERISA §4001(b)(1); 29 U.S.C. §1301(b)(1); *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82 (2nd Cir. 1997) and 29 U.S.C. 1401(f)(3)(B).

It is undisputed that T & W Edmier Corp. and The E Company did not employ any persons engaged in covered operations or make contributions to the Fund after 2014 as both corporations ceased as a result of dissolution. (L. R. 56.1 ¶23) These facts constitute a complete withdrawal as

6

a permanent cessation of any obligation to contribute under the plan, and a permanent cessation of all covered operations under the plan as defined in 29 U.S.C. 1383(a)(1) and (2).

The Seventh Circuit has stated that "'covered operations' [under § 1383(a)(2)] refers to those operations which are covered by the collective bargaining agreement (through the relevant bargaining unit definition) for which the employer must contribute to [the] pension plan." *Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 214 n.10 (7th Cir. 1989). Thus, once these operations cease a complete withdrawal has occurred.

Just as with the employers in *Central States v. Bellmont Trucking,* 872 F.2d 208 (7th Cir. 1989) and *Brentwood Financial v. Western Conf. Teamsters Pension Fund,* 902 F.2d 1458 (9th Cir. 1990)*,* T & W Edmier Corp. and The E Company effectuated a permanent withdrawal from the plan when it ceased to employ any workers covered by the plan and closed its operation in 2014 (L. R. 56.1 ¶23). In so doing it permanently ceased to have an obligation to contribute under the plan and permanently ceased all covered operations under the plan. In turn it satisfied the criteria of 29 U.S.C. § 1383 for a complete withdrawal.

**2.     In permanently withdrawing from the Fund, Edmier incurred $640,900 in withdrawal liability**

In withdrawing from its Fund obligations, Edmier incurred withdrawal liability. This is because under 29 U.S.C. § 1381, when an employer withdraws from a multiemployer plan, the employer becomes immediately liable for its proportionate share of unfunded vested benefits. *See Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Rentar Indus.*, 951 F.2d 152, 153 (7th Cir. 1991). The amount of withdrawal liability is determined by the relevant multiemployer pension fund, which subsequently must notify the employer of that amount and collect that amount. 29 U.S.C. § 1382; *Cent. States, Southeast and Southwest Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 666 (7th Cir. 2005).

The plan's notice of withdrawal liability must include a schedule of payments "beginning no later than 60 days after the date of the demand notwithstanding any request for review." ERISA §4219(c)(2), 29 U.S.C. §1399(2). If the employer fails to pay, the trustees may issue a past due

7

notice. If the administrative review period has ended, upon the employer's failure to cure the delinquency within 60 days thereafter, the trustees can declare a default, accelerating the full amount of withdrawal liability. ERISA, 29 U.S.C. §1399(c)(5). However, the trustees must give notice of default before accelerating the withdrawal liability amount. *CTDU Pension Fund v. El Paso CGP Co.,* 2006 U.S. Dist. LEXIS 38694, 38 EBC 1391 (N.D. Ill. Jun. 9, 2006). *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 899 (7th Cir. 1988). (L. R. 56.1 ¶21, 28, 41-46)

In this case, the Fund determined that Edmier withdrew from the Fund and that the company incurred withdrawal liability in the principal amount of $654,724.00[1]. (L. R. 56.1 ¶21) Thomas Edmier, William Edmier, and Kevin Edmier each admit that they received a notice and demand for payment of withdrawal liability dated April 30, 2015, a past due notice for payment of the withdrawal liability dated August 17, 2015, and a default notice dated November 12, 2105. (L. R. 56.1 ¶42-44) Moreover, notice to one controlled group member [of withdrawal liability] constitutes notice to all. *Central States, S.E. & S.W. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 496 (7th Cir. 2000). Therefore, as Thomas, William, and Kevin admit to receiving notice, it is undisputed that T & W Edmier Corp., The E Company, Edmier Corp., K. Edmier and Sons, LLC and Thomas Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc. and E & E Equipment & Leasing, Inc. and The E Company and T & W Edmier Corp.'s agent, George Grumley, received notice of the withdrawal liability and took no action to pursue arbitration under 29 U.S.C. 1401 foreclosing any defenses to all. (L. R. 56.1 ¶47, 48, 50)

### 3. Edmier has waived any challenge to the Fund's assessment of withdrawal liability because it did not request review or arbitration within 90 days of the Fund's notice

If the employer fails to timely initiate arbitration, the withdrawal liability assessed by the plan sponsors is due and owing according to the payment schedules. ERISA §4221(b)(1). Courts

---

[1] A final withdrawal figure was determined by Cheiron reducing the 18th and final installment to $9,844.60 . By that time the Edmier control group was already in default on payment and time to request arbitration had run.

8

have routinely precluded employers who fail to initiate arbitration on a timely basis from challenging the plan sponsor's assessment of withdrawal liability . See e.g., *Nat'l Shopmen Pension Fund v. DISA Industries, Inc.,* 653 F.3d. 573, 580 (7th Cir. Aug. 8, 2011); *Cent. States Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992). The waiver generally applies to the entire controlled group. See, e.g., *IAM Pension Fund v. Slyman Industries*, 901 F.2d 127 (D.C. Cir. 1990); *McDonald v. Centra, Inc.,* 946 F.2d 1049 (4th Cir. 1991).

If an employer wishes to contest the withdrawal liability assessment, it must "ask the plan to review its assessment, 29 U.S.C. § 1399(b)(2), and if still dissatisfied, may initiate arbitration" pursuant to 29 U.S.C. §1401(a)(1). *Central States, Southeast and Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992); *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994) (quoting *Ditell,* 974 F.2d at 888). *See also Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001). Even if an employer has a meritorious challenge to the Fund's determination, in failing to request arbitration the employer defaults in its ability to do so. *See Robbins*, 866 F.2d at 899.

An employer must request review of the notice of withdrawal liability within 90 days of receipt of the notice. 29 U.S.C. § 1399(b)(2). Moreover, Edmier is in default within the meaning of 29 U.S.C. § 1399(c)(5), since it did not make any of the interim withdrawal liability payments, even after receiving the Fund's past due notice on behalf of the Trustees stating that it was in default. *Chicago Truck Drivers, Helpers and Warehouse Union (Indep.) Pension Fund v. Century Motor Freight*, 125 F.3d 526, 533 (7th Cir. 1997). Therefore, Edmier and all control group members have waived the right to challenge the withdrawal liability assessment, is in default on the payment of the assessment amount, and the full amount of the withdrawal liability sought by the Fund is now due, together with interest, liquidated damages, attorneys fees, and costs.

---

*Central States Pension v. Boise Cascade Corp.*, 1994 U.S. Dist. Lexis 1485 (N.D. Ill. 1994) no new assessment period was created under Section 1399(b).

9

4.   **T & W Edmier Corp., The E Company, Edmier Corp., K. Edmier and Sons, LLC, Thomas W. Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc. and E & E Equipment & Leasing, Inc. are under common control and treated as a single employer under 29 U.S.C. 1401(f)(3)(B).**

Courts have consistently held that notice to one employer within a control group is notice to all members of the control group. See, e.g., *Ladies Garment Workers Nat'l Ret. Fund v. ESI Group*, 28 EBC 1728 (S.D.N.Y. 2002), aff'd sub nom. *Ladies Garment Workers Nat'l Ret. Fund v. Meredith Grey, Inc.*, 94 Fed. Appx. 850 (2d Cir. 2003); *Cent. States Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992). See also *Teamsters Local 863 Pension Fund Trs. v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002) (ruling that notice to the withdrawn employer constitutes sufficient notice to the employer's alter egos). The initial capital for all Defendants was provided by William and Thomas Edmier from their personal accounts. (L. R. 56.1 ¶20)

A.   **Identifying the Employer for Withdrawal Liability Purposes**

In general, all trades or businesses "under common control" are treated as a single employer for purposes of withdrawal liability and other matters under Title IV of ERISA. ERISA §4001(b)(1), 29 USC §1301(b)(1) and 1401(e)(3)(B). This applies to a determination of whether a withdrawal has occurred and means that controlled group members are jointly and severally liable for withdrawal liability. Thus, the discharge of a controlled group member's withdrawal liability in bankruptcy does not discharge the other controlled group members' withdrawal liability obligations. *I.A.M. Nat'l Pension Fund v. TMR Realty Co, Inc.*, 431 F. Supp. 2d 1 (D.D.C. 2006). Partners and joint ventures are jointly and severally liable for the withdrawal liability. *Teamsters Pension Trust Fund v. H.F. Johnson,* 830 F.2d 1009 (9th Cir. 1987). Under certain circumstances, parent-subsidiary and brother-sister groups will be jointly and severally liable for the withdrawal liability. *Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82 (2d Cir. 1997). A shareholder may also be liable for his corporation's withdrawal liability if he owns investment property or other assets which are treated as a trade or business under common control. See, e.g., *Cent. States Pension Fund v. Messina Products, LLC*, 706 F.3d 874 (7th Cir. 2013)(holding that renting property to the contributing employer is "categorically" a trade or

business) as Thomas and William Edmier do as The William Edmier Trust to T & W Edmier Corp.; (L. R. 56.1 ¶9, 10). *Cent. States Pension Fund v. Personnel, Inc.*, 974 F.2d 789 (7th Cir. 1992); *Western Conference of Teamsters Pension Fund v. LaFrenz*, 837 F.2d 892 (9th Cir. 1988). The trade or business need not have an economic nexus to the company that incurred the withdrawal liability. *Cent. States Southeast & Southwest Areas Pension Fund v. White*, 258 F.3d 636 (7th Cir. 2001); *Connors v. Incoal, Inc.,* 995 F.2d 245 (D.C. Cir. 1993). Generally, when determining whether an activity is a "trade or business", courts consider whether the person was engaged in the activity (1) for the primary purpose of income or profit and (2) with continuity and regularity. See *Cent. States Pension Fund v. CLP Venture, LLC,* 760 F.2d 745, 749 (7th Cir. 2014) which is the case of all the Edmier enterprises.

  T & W Edmier Corp., The E Company, Edmier Corp., K Edmier and Sons, LLC, Thomas Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc. and E & E Equipment & Leasing, Inc. (L. R. 56.1 ¶5, 20) are all under common control and therefore, jointly and severally liable as they are all interlocking enterprises of closely held corporations doing business with the withdrawal employer and owned or controlled by William and Thomas Edmier who provided the initial capital for all Defendants from their personal bank accounts. (L. R. 56.1 ¶20):

> '[T]rades or businesses under common control' are treated as being a 'single employer' for purposes of determining withdrawal liability. Under ERISA, two business organizations are under 'common control' if one has a direct or indirect ownership interest of eighty percent or more in the other. If such is the case, both organizations are jointly and severally liable for the withdrawal liability incurred by any one member of the same control group."

*Cent. States S.E & S.W. Areas Pension Fund v. Quickie Transp. Co*., 6 Fed. Appx. 456, 458-459 (7th Cir. 2001).

  The E Company and T & W Edmier Corp. were signatory companies and bound to pay benefits to the Plaintiff Fund. (L. R. 56.1 ¶7) T & W Edmier Corp. is owned by Thomas Edmier (the individual defendant) and William Edmier (L. R. 56.1 ¶27). The E Company, the other

11

signatory company, is owned by Kevin Edmier (L. R. 56.1 ¶ 27) The E Company's letter of agreement signed by Kevin Edmier states: (Colin Affidavit Exhibit 2)

> "The Employer agrees to adopt and be bound, jointly and severally, to an existing collective bargaining agreement with T. W. Edmier. Said agreement is incorporated by reference herein. The E Company, Inc. and T. W. Edmier maintain a single shared seniority list for both companies. The seniority list shall include current employees and new employees of the two employing entities." (L. R. 56.1 ¶36)

This further demonstrates the interrelation of The E Company and T & W Edmier Corp. The T & W Edmier Corp. agreement is incorporated into The E Company agreement, and the companies share a single seniority list. (L. R. 56.1 ¶35-38; Colin Affidavit Exhibits 1 and 2)

Edmier Corp. was owned exclusively by William Edmier. *Id.* Kevin Edmier is the only member of K. Edmier and Sons, LLC. *Id.* All of these individuals are all family. Thomas and William are brothers own 249 W. Lake Street, Elmhurst, Illinois jointly where all list as a business address, and William is Kevin's father. All of the defendants had reason to believe that they would be subject to withdrawal liability and waived the issue of control group membership by failing to arbitrate under 29 U.S.C. 1401(b)(1). Lake Street Realty, Inc. and E & E Equipment & Leasing, Inc. are owned by Thomas and William Edmier and did business with T & W Edmier Corp. (L. R. 56.1 ¶9, 11, 14-15; Exhibit 7 Secretary of State)

### NOTICE TO ONE CONTROL GROUP MEMBER IS NOTICE TO ALL

Edmier cannot dispute control group membership, because they failed to arbitrate, request a review of the withdrawal liability findings, and failed to make any of the interim withdrawal liability payments. See *Chicago Truck Drivers Pension Fund v. El Paso CGP Co.*, 2005 U.S. Dist. LEXIS 24579 at *22-23 (N.D. Ill. Oct. 18, 2005). Anyone who suspects that he might be adjudged a member of the control group is well advised to commence arbitration. *Central States, S.E. & S.W. Areas Pension Fund v. Slotky,* 956 F.2d 1373 (7th Cir. 1992).

The Defendants had reason to know they may be deemed members of the control group, because the owners of the companies all received actual notice. In *Chicago Truck Drivers Pension Fund v. El Paso CGP Co.*, 2005 U.S. Dist. LEXIS 24579 (N.D. Ill. Oct. 18, 2005), the

12

defendants attempted to deny they were an employer under the MPPAA by stating they were never members of the control group. The court disagreed. The defendants received actual notice of withdrawal liability. Second, the Fund argued that the defendants waived the right to argue control group membership. Therefore, Court held that the defendants were not entitled to discovery regarding the control group membership issue. They could anticipate control group membership by virtue of the inter-related operations.

### B. THOMAS EDMIER AND WILLIAM EDMIER AND THE WILLIAM EDMIER TRUST ARE INDIVIDUALLY LIABLE FOR WITHDRAWAL LIABILITY

Thomas Edmier, William Edmier and The William Edmier Trust are individually liable for the withdrawal liability in the amount of $640,900. Congress provided that all trades or businesses under common control with the withdrawing employer are treated as a single employer for purposes of joint and several liability under 29 U.S.C. 1301(b)(1) including real estate ownership and equipment leasing. (L. R. 56.1 ¶9, 10, 14)

### CONTROL GROUP INCLUDES INDIVIDUAL DEFENDANTS WILLIAM AND THOMAS EDMIER AND THE WILLIAM EDMIER TRUST

The Seventh Circuit has categorically determined that when an individual (William and Thomas Edmier) owns the property on which the withdrawing employer (The E Company/T & W Edmier Corp.) conducts its operations and leases the property back to the withdrawing company or permits it to operate rent free, this activity qualifies as a trade or business under §1301(b)(1) sufficient to impose personal liability on the land owners. *Central States Pension Fund v. Messina Products, LLC*, 706 F.3d 874, 881 (7th Cir. 23013); *Central States v. SCOFBP, LLC*, 669 F.3d 873, 879 (7th Cir. 2011); *Central States v. Nagey*, 714 F.3d 545 (7th Cir. 2013) following *Messina* and *SCOFBP*.

The categorical rule established in these cases is that for §1301(b)(1) where the real estate is rented or to be used by the withdrawing employer and there is common ownership, it categorically constitutes a trade or business under common control with the withdrawing employer, which triggers personal liability under §1301(b)(1) of the land owner.

13

William and Thomas Edmier, jointly, through The William Edmier Trust, own the 249 W. Lake Street, Elmhurst Illinois real estate on which T & W Edmier Corp., a closely held corporation they control and conduct business. They are categorically in the trade or business of renting the Lake Street property and lease to two other rental tenants, Hart's Tractor and National Trench Safety at that location. They are thus as a matter of law personally liable for the T & W Edmier Corp. withdrawal liability assessment. (L. R. 56.1 ¶9, 10)

### TRUCK LEASING OPERATION

William and Thomas Edmier are additionally personally liable for the T & W Edmier Corp. withdrawal liability as they owned individually the trucks used by T & W Edmier Corp. (L. R. 56.1 ¶12, 13). *Trustees of Western Conference of Teamsters Pension Fund v. LaFrenz*, 837 F.2d 892 (9th Cir. 1988). Therein, the LaFrenz' owed 96% of the withdrawing redi-mix employer and 100% of the truck leasing operation, owning two Mack dump trucks. The court found them to be under common control and granted the funds' Motion for Summary Judgment for personal liability as to Mr. and Mr. LaFrenz. William Edmier and Thomas Edmier own E & E Equipment & Leasing, Inc., a separate trade or business conducting business with T & W Edmier Corp. (L. R. 56.1 ¶14, 15)

Here the truck leasing operation owned by William and Thomas Edmier leased (used) the vehicles by T & W Edmier Corp. , the closely held corporation they owned as 100% (50/50) shareholders. (L. R. 56.1 ¶29). So the truck leasing and T & W Edmier Corp. are treated as a single business entity, particularly when the commonly controlled businesses are economically related. The E Company supplies personnel, (L. R. 56.1 ¶32, 35) William and Thomas' trucks, T & W Edmier Corp. work, it is an enterprise structured to evade or avoid withdrawal liability. 29 U.S.C. 1369 and 1392(c).

Edmier is nearly identical to both the *LaFrenz* equipment and *Nagy* premises leasing situations.

Thus the individuals, William and Thomas Edmier and The William Edmier Trust, owners of 249 W. Lake Street, Elmhurst, Illinois are personally liable for The E Company/T & W Edmier Corp. withdrawal liability, jointly and severally on two bases:

**1.** As joint owners of the property at 249 W. Lake Street used by the withdrawing employer, T & W Edmier Corp., in which they own 100% of the stock and lease to other tenants as a business.

**2.** William and Thomas Edmier, as individual owner/lessors of trucks that are used by T & W Edmier Corp., the withdrawing employer, in which they own 100% of the stock or as E & E Equipment & Leasing, Inc. a business they own.

Therefore, Thomas Edmier, William Edmier and The William Edmier Trust are individually liable for the withdrawal liability in the amount of $640,900.

## CONCLUSION

Plaintiff has demonstrated that entry of summary judgment in a sum certain is appropriate against the Edmier Control Group as:

**1.** Edmier/E Company completely withdrew from the Fund a business.

**2.** The Fund determined the amount of withdrawal liability, and the accompanying schedule of payments, that Edmier Defendants owe withdrawal liability payments to the Fund, that the Fund notified Edmier and its counsel of the withdrawal liability and schedule, and that the Fund notified Edmier when payments were past due and when it was in default.

**3.** Edmier did not request review or arbitration of withdrawal liability or pay and is now barred under 29 U.S.C. 1401(b) from posing any defenses.

WHEREFORE, Plaintiff prays for entry of summary judgment as to liability and an award of damages for contributions owed plus all relief required pursuant to 29 U.S.C. 1132(g)(2) and that pursuant to 29 U.S.C. 1401(b) judgment be entered in the amount of $640,900, jointly, severally and individually against Thomas Edmier, William Edmier, The William Edmier Trust, E & E Equipment & Leasing, Inc., Lake Street Realty, Inc., T & W Edmier Corp., The E Company, K. Edmier & Sons, LLC and the Edmier Corp.

TRUSTEES OF THE SUBURBAN TEAMSTERS
OF NORTHERN ILLINOIS PENSION FUND

s/John J. Toomey
ARNOLD AND KADJAN, LLP
35 E. Wacker Dr., Suite 600
Chicago, IL 60601
Telephone No.: (312) 236-0415
Dated: August 4, 2017