**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, | ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 10323 |
| v. | ) ) | |
| THE E COMPANY, et al., | ) ) | Judge Thomas M. Durkin |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Trustees of the Suburban Teamsters of Northern Illinois Pension Fund ("the Fund") sued defendants The E Company, T & W Edmier Corp., Edmier Corp., K. Edmier & Sons, LLC, Thomas W. Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc., and E & E Equipment & Leasing, Inc. ("defendants") to collect liability incurred under the Employee Retirement Income Security Act of 1974 ("ERISA") after The E Company and T & W Edmier withdrew from the Fund. The Fund seeks to hold all defendants—a group of closely-held entities and their owners—jointly and severally liable for The E Company and T & W Edmier's withdrawal liability.

Currently before the Court is the Fund's motion for summary judgment. R. 47. For the reasons that follow, the Court grants the Fund's motion.[1]

---

[1] The Court also grants defendants' motion for an extension of time to file supplemental briefing (R. 84). This Court has considered that supplemental briefing

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

It is well-established that "[w]hen an employer participates in a multiemployer pension plan and then withdraws," not only can federal courts enter judgment against the employer for withdrawal liability, but they can "impose liability on owners and related businesses." *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 877 (7th Cir. 2013). As shown below, based on straightforward application of ERISA principles, withdrawing employers The E Company and T & W Edmier's liability assessment is due and owing, and

---

in its ruling. The Court grants in part and denies in part the Fund's motion to strike defendants' supplemental statement of additional facts (R. 93).

they have waived any defenses to that assessment by failing to arbitrate. Less straightforward is the issue of whether the other defendants are jointly and severally liable for that withdrawal liability. The Court first addresses the withdrawing employer defendants' liability, followed by the other defendants' joint and several liability.

### A. Liability of Withdrawing Employers

ERISA, "as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), establishes withdrawal liability for employers leaving a multiemployer pension plan." *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 2018 WL 1250471, at *1 (7th Cir. Mar. 12, 2018). "[A] complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383.

Defendant T & W Edmier, a construction company, signed a collective bargaining agreement with the Fund, which The E Company adopted in a joint and several liability agreement. R. 72 (Ds' Resp. to Ps' L.R. 56.1 Statement[2]) ¶¶ 7-8, 36-

---

[2] Defendants responded to numerous paragraphs in the Fund's Local Rule 56.1 Statement of Material Facts by stating "disputed" or by making a factual assertion without citing any evidence in support. These responses plainly violated the local rules, which obligated defendants to "includ[e], in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied on." L.R. 56.1(b)(3)(B). After the Fund highlighted this issue in its reply (R. 73 at 2), defendants' counsel admitted non-compliance and sought leave to file a supporting affidavit on or before November 28, 2017, which the Court granted. R. 78. But defendants never filed a supporting affidavit. The Court therefore deems admitted all facts set forth in the Fund's Local Rule 56.1 Statement. *See, e.g.*, *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("When a responding

37. Both T & W Edmier and The E Company stopped making contributions to the Fund and closed operations in 2014. *Id.* ¶ 23. These facts constitute a complete withdrawal.

Under ERISA, an employer who completely withdraws "is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. If the employer does not pay, the plan can declare a default, and after giving notice of default, accelerate the full amount of withdrawal liability. 29 U.S.C. § 1399(c)(5).

The Fund assessed withdrawal liability of $640,900 against The E Company and T & W Edmier. R. 72 ¶¶ 21, 46. The Fund sent The E Company and T & W Edmier a notice of withdrawal liability on April 30, 2015, a past due notice on August 17, 2015, and a default notice and acceleration on November 12, 2015. *Id.* ¶¶ 41, 42, 44, 45. The companies never made any liability payments, responded to

---

party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the [local] rule, those facts are deemed admitted for purposes of the motion. The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.").

 The Court also grants the Fund's motion to strike defendants' Supplemental Statement of Additional Facts (R. 91)—filed on March 9, 2018 after new counsel appeared for defendants in the case—to the extent that it attempts to contradict facts deemed admitted based on defendants' failure to respond properly to the Fund's Local Rule 56.1 Statement. Defendants waived their right to correct their prior response by failing to file a supporting affidavit when this Court authorized them to do so. The Court otherwise denies the Fund's motion to strike (R. 91), but finds that the facts presented in defendants' Supplemental Statement do not change its conclusions.

4

the notices, raised any defense, or requested arbitration during the time permitted by ERISA, 29 U.S.C. § 1401. *Id.* ¶¶ 46-47.

T & W Edmier and The E Company claim they "were unable to pay due to the involuntary dissolution of T & W Edmier Corp. and The E Company," and that they stopped operating well before receiving the notice of withdrawal liability. R. 71 at 5. But ERISA is clear that such a dispute must be arbitrated. *See* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 [including withdrawal liability determinations under § 1399] of this title shall be resolved through arbitration."); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1057 (7th Cir. 1988) ("[v]ery simply, § 1401(a)(1) requires arbitration of any dispute regarding a determination made under §§ 1381-1399").

Failure to arbitrate means that "the plan can then immediately file suit," as it has in this case, "to collect the entire amount of withdrawal liability, and in that proceeding the employer will have forfeited any defenses it could have presented to the arbitrator." *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 579 (7th Cir. 2011) (citing 29 U.S.C. § 1401(b)(1)); *accord Cent. States S.E. & S.W. Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1372 (7th Cir. 1992) ("fail[ure] to request arbitration" means "the amount of withdrawal liability assessed by the plan becomes due and owing and the plan can . . . sue to collect it"). Because The E Company and T & W Edmier failed to arbitrate, the $640,900 withdrawal liability

assessment is "due and owing" (*Slotky*, 956 F.2d at 1372), and defenses that could have been raised in arbitration are waived (*Nat'l Shopmen*, 653 F.3d at 579).

## B. Joint and Several Liability of Other Defendants

"Not only the withdrawing employer" incurs withdrawal liability. *Messina*, 706 F.3d at 878. "Congress also provided that all 'trades or businesses' under 'common control' with the withdrawing employer are treated as a single entity for purposes of assessing and collecting withdrawal liability. Each trade or business found to be under common control is jointly and severally liable for any withdrawal liability of any other." *Id.* (quoting 29 U.S.C. § 1301(b)(1)). This is commonly referred to as "the controlled group provision." *Slotky*, 956 F.2d at 1372. The purpose of this provision is "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Messina*, 706 F.3d at 878.

The Fund maintains that all defendants are part of a controlled group, and that they have waived any ability to challenge controlled group membership by failing to arbitrate. Defendants dispute that they are part of a controlled group, and cite older, out-of-circuit case law for the proposition that failure to arbitrate is not an absolute, jurisdictional bar to this Court deciding disputes regarding controlled group membership. R. 71 at 5-7.

Although defendants are correct that failure to arbitrate is not a jurisdictional bar to a district court's adjudication of controlled group disputes (*Slotky*, 956 F.2d at 1373), defendants ignore and fail to apply the relevant Seventh

6

Circuit precedent. In *Slotky*, the Seventh Circuit held that it is proper for federal district courts to determine "some disputes over membership in a controlled group" even if defendants failed to arbitrate. 956 F.2d at 1373. Although it declined to provide a definitive test, the *Slotky* court identified two circumstances where district courts can decide such disputes. The first is where the fund concedes that the district court can consider the controlled group issue, as was the case in *Slotky*. *Id*. The second is where "people who had absolutely no reason to believe that they might by deemed members of a controlled group [otherwise] would be foreclosed from litigating the issue in any forum because they never received notice of their potential liability." *Id*. The court provided the following example:

> [T]he plan could have sued the Easter Bunny and when the Bunny complained that he was not a trade or business under common control with [the withdrawing employer, the plan] could have replied that the Bunny had waived the argument by failing to demand arbitration within the statutory deadline. For of course [the withdrawing employer], never suspecting that the Easter Bunny might be a trade or business under common control with it, would not have forwarded the notice to the Bunny.

*Id*. at 1372-73.

This case does not involve the first circumstance identified in *Slotky*. Far from conceding that this Court may properly decide defendants' controlled group dispute, the Fund instead argues vehemently that defendants have forfeited that dispute through failure to arbitrate. Nor can any of the defendants in this case be deemed to be as unsuspecting of potential liability as the Easter Bunny in the second circumstance identified in *Slotky*.

7

But the *Slotky* court did not provide a definitive test to apply in less extreme cases. It seems clear under *Slotky* that a defendant who "received notice of . . . potential liability" has waived a dispute over controlled group membership by failing to arbitrate. *See id.*; *see also Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 2005 WL 2737072, at *7-8 (N.D. Ill. Oct. 18, 2005) (defendant receiving notice waives dispute over controlled group membership under *Slotky*). Three of the non-withdrawing-employer defendants—Thomas Edmier, William Edmier, and Edmier Corp.—are named in the notice of withdrawal liability. R. 95 at 10 (letter is addressed to "T & W Edmier Corporation and The E Company," "Edmier Corp.," "Attention: Thomas Edmier," "Attention: William Edmier," and "Attention: Kevin W. Edmier"). Defendants admit that the notice of withdrawal liability and the notice of default were both sent to defendant Edmier Corp. R. 96 (Pls' Resp. Ds' Additional Facts) ¶¶ 2, 7. But other defendants—K. Edmier & Sons, the William Edmier Trust, Lake Street Realty, and E & E Equiment & Leasing—are not named in the notice. R. 95 at 10.

Even if not actually named in the notice, the *Slotky* court explained that "the statutory policy of encouraging the prompt nonjudicial resolution of disputes" might require any defendant who "should know that he might very well be deemed a member of the controlled group" "to institute arbitration on penalty of losing all opportunity to contest his membership." 956 F.2d at 1373. Based on the fact that the notice of withdrawal liability was sent to the address where K. Edmier & Sons and Lake Street Realty had their principal places of business (R. 72 ¶¶ 11, 17, 27),

8

they too might be deemed to have been on constructive notice of potential liability and to have waived any controlled group membership defense.[3] Moreover, the fact that counsel for defendants in this case, George Grumley, received the notice of withdrawal liability (*id.* ¶¶ 28, 41), could support the conclusion that all defendants should have been alerted to their potential liability as controlled group members.[4]

In sum, the Court finds that at least Edmier Corp. has forfeited its controlled group membership dispute through failure to arbitrate because defendants admit that it received notice. R. 96 ¶¶ 2, 7. Thomas Edmier, and William Edmier, and the other non-withdrawing-employer defendants, likely forfeited their controlled group membership dispute through failure to arbitrate as well. But because the forfeiture issue is not clear cut,[5] the Court will also address controlled group membership on

---

[3] Defendants claim the following statement in the notice of withdrawal liability was misleading as to non-withdrawing-employer defendants' potential liability: "The withdrawal liability is based only on the contributions made by the T & W Edmier Corporation and The E Company. If there are companies under common control with T & W Edmier Corporation or The E Company and if those companies have also contributed to the Pension Fund, then the contribution history of those companies should be considered in calculating the withdrawal liability." R. 95 at 10. Defendants say they took these sentences to mean that potential liability of other entities was "predicated on whether they 'have also contributed to the fund.'" R. 92 at 8. That is not what these sentences say. Instead, they say that the withdrawal liability calculation might change based on the contribution history of other companies under common control. They do not speak one way or another to the issue of whether companies under common control might be held jointly and severally liable for the withdrawal liability already calculated for T & W Edmier and The E Company.

[4] Defendants' complaint that the notice "fail[ed] to provide defendants an explanation of control group liability," which is not self-evident to laymen (R. 92 at 4-9), rings hollow in light of the fact that defendants' attorney received the notice and could have explained it to them.

[5] Defendants filed a twelve-page "Supplemental Memorandum on the Issue of Procedural Due Process" (R. 92) arguing that finding a forfeiture based on failure to

9

arbitrate violates principles of "procedural due process," which dictate "that a person may not have his rights or obligations determined in any proceeding for which he has not been afforded reasonable notice." R. 92 at 1-2. Defendants cite pre-ERISA Supreme Court law for the basic proposition that notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action." *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). They argue that the non-withdrawing-employer defendants were "deprived . . . of fair warning" that they might be liable for withdrawal liability. R. 92 at 7.

The Court finds that the principles espoused in *Slotky* account for procedural due process concerns and constitute the governing law in this area. *See* 956 F.2d at 1372-73, 1375 (addressing notice and fairness concerns regarding "people who had absolutely no reason to believe that they might be deemed members of a controlled group," and finding that "the requirements of due process [we]re met" in that case).

In any event, this Court goes on to find affirmatively that all but one of the defendants are members of a controlled group with one of the withdrawing-employer defendants. This finding eliminates any concern with the lack of notice provided to these defendants. As defendants concede, "courts have consistently held that notice to one employer within a control group is sufficient notice to all members in the control group." R. 71 at 13. "The controlled group provision allows a plan to deal exclusively with the defaulting employer known to the fund, while at the same time assuring [itself] that legal remedies can be maintained against all related entities in the control group." *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 595-96 (7th Cir. 2008).

It is unclear whether defendants intend in their supplemental memorandum to mount a further procedural due process challenge to the controlled group provision in ERISA, 29 U.S.C. § 1301(b), which courts have relied on to find that notice to one controlled group member is "constructive notice to all other members." *E.g.*, *El Paso*, 525 F.3d at 596. If defendants did intend to make such an argument, this Court joins other courts in rejecting it. *See, e.g.*, *Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987) (rejecting argument that "§ 1301(b) violates procedural requirements of the Due Process Clause" because "the requirement of common control in § 1301(b) assures that individuals and entities who may ultimately be held liable for withdrawal liability in fact have notice and an opportunity to contest the existence and extent of that liability"); *Cent. States, Se. & Sw. Areas Pension Fund v. Skyland Leasing Co.*, 691 F. Supp. 6, 13 (W.D. Mich. 1987), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Skyland Leasing*, 892 F.2d 1043 (6th Cir. 1990) ("Defendant's contention that Section 1301(b)(1) should be read to mean that all entities within the control group be afforded the same procedural due process rights as the withdrawn employer and given separate notice of withdrawal liability emasculates the concept of 'single employer.'"); *see also Slotky*, 956 F.2d at 1375 ("the requirements of due process are met" despite seeming harshness of rule "that notice to one member of a controlled group is notice to all").

the merits. *See Slotky*, 956 F.2d at 1373-74 (even though technically factual, controlled group membership is properly decided on summary judgment).

To be part of the same controlled group, individuals or entities must be (1) "trades or businesses" under (2) "common control" with the withdrawing employer. *Messina*, 706 F.3d at 878 (quoting 29 U.S.C. § 1301(b)(1)). The Court addresses each element in turn, first for the non-withdrawing-employer entity defendants, followed by the individual and trust defendants.

   1.   **Trades or Businesses**

**Entity defendants.** "The phrase 'trade or business' is not defined" in ERISA. *Id*. "To apply the term under the MPPAA, [the Seventh Circuit has] adopted the test adopted by the Supreme Court . . . in *Commissioner of Internal Revenue v. Groetzinger,* 480 U.S. 23, 35 (1987). The '*Groetzinger* test' requires that for economic activity to be considered the operation of a trade or business the activity must be performed (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Messina*, 706 F.3d at 878.

Defendants' summary judgment response does not dispute that the non-withdrawing-employer entity defendants—Edmier Corp., K. Edmier & Sons, Lake Street Realty, and E & E Equipment & Leasing—qualified as trades or businesses. And although defendants claim in their response to the Fund's Local Rule 56.1 Statement that Edmier Corp., Lake Street Realty, and E & E Equipment & Leasing were never active in business (R. 72 ¶¶ 11, 14, 19), they do not cite any evidentiary support. The fact that these corporations were active in business is therefore

the merits. *See Slotky*, 956 F.2d at 1373-74 (even though technically factual, controlled group membership is properly decided on summary judgment).

To be part of the same controlled group, individuals or entities must be (1) "trades or businesses" under (2) "common control" with the withdrawing employer. *Messina*, 706 F.3d at 878 (quoting 29 U.S.C. § 1301(b)(1)). The Court addresses each element in turn, first for the non-withdrawing-employer entity defendants, followed by the individual and trust defendants.

   1.   **Trades or Businesses**

**Entity defendants.** "The phrase 'trade or business' is not defined" in ERISA. *Id*. "To apply the term under the MPPAA, [the Seventh Circuit has] adopted the test adopted by the Supreme Court . . . in *Commissioner of Internal Revenue v. Groetzinger,* 480 U.S. 23, 35 (1987). The '*Groetzinger* test' requires that for economic activity to be considered the operation of a trade or business the activity must be performed (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Messina*, 706 F.3d at 878.

Defendants' summary judgment response does not dispute that the non-withdrawing-employer entity defendants—Edmier Corp., K. Edmier & Sons, Lake Street Realty, and E & E Equipment & Leasing—qualified as trades or businesses. And although defendants claim in their response to the Fund's Local Rule 56.1 Statement that Edmier Corp., Lake Street Realty, and E & E Equipment & Leasing were never active in business (R. 72 ¶¶ 11, 14, 19), they do not cite any evidentiary support. The fact that these corporations were active in business is therefore

deemed admitted. *See Curtis*, 807 F.3d at 218-19. And in any event, as the Seventh Circuit explained in *Messina*, "[i]t is highly unlikely that a formal for-profit business organization would not qualify as a trade or business under the *Groetzinger* test." 706 F.3d at 885.

**Individual and trust defendants.** As with the individual defendants in *Messina*, "[t]he Fund does not seek to hold [the individual and trust defendants] liable merely because of their ownership of or positions within [the employer-defendant], nor could it" under the *Groetzinger* test. *Id.* at 880. "Instead, the Fund seeks to hold [these defendants] liable for operating as a 'trade or business' as commercial and residential landlords." *Id.* The Seventh Circuit has held that "renting property to a withdrawing employer is 'categorically' a trade or business." *Id.* at 881 (citing *Central States, S.E. & S.W. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873 (7th Cir. 2011)). Specifically, permitting a withdrawing employer "to operate on the property [the individual defendants] owned without a formal written lease and without paying rent for several years" constitutes a trade or business. *Id.*

Here, just as in *Messina*, defendants Thomas and William Edmier, individually and as trustees of defendant the William Edmier Trust, owned the premises at 249 W. Lake Street, Elmhurst, Illinois. R. 72 ¶¶ 9-10. As owners, these defendants permitted withdrawing employer T & W Edmier to "operate[ ] from that address without a lease and pa[y] no rent from 1986 until its closing in 2014." R. 72 ¶ 9. Thus, defendants Thomas and William Edmier and the William Edmier Trust's

"rental activities satisf[y] the *Groetzinger* test" and qualify as a "trade or business." *Messina*, 706 F.3d at 884.

### 2. Common Control

**Entity defendants.** As the Fund correctly explains, defendants "are all interlocking enterprises of closely held corporations doing business with the withdrawal employer and owned or controlled by" the Edmier family. R. 49 at 11. The initial capital for all defendants was provided by William and Thomas Edmier's bank accounts. R. 72 ¶ 6. The non-withdrawing-employer defendants nevertheless dispute the element of common control.

"The [Pension Benefit Guarantee Corporation] has adopted the language set forth in Section 414(c) of the Internal Revenue Code, which identifies both 'parent-subsidiary' and 'brother-sister' organization groupings as forms of common control." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 738 F. Supp. 2d 840, 846 (N.D. Ill. 2010), *aff'd*, 668 F.3d 873 (7th Cir. 2011) (citing 26 C.F.R. § 1.414(c)-2). "A 'brother-sister group' is one in which (1) 'five or fewer persons who are individuals, estates, or trusts' own a controlling interest (at least 80 percent of the stock [or the equivalent in non-corporations]) in two or more organizations and (2) the same persons maintain 'effective control' (at least 50 percent of the stock [or the equivalent in non-corporations]) over each organization." *Id*. But "a person's stock ownership is not taken into account for purposes of the 80% control test unless that person owns stock in each corporation of the putative brother-sister group." *Cent.*

*State v. Wolk*, 2001 WL 301145, at *4 (N.D. Ill. Mar. 28, 2001); 26 C.F.R. § 1.414(c)-(2)(c).

As an initial matter, the Court finds that the issue of ownership and control over the defendants—and in particular stock ownership—is not well briefed by either party. The Court takes defendants' failure to contest relevant facts about controlled group membership, including company ownership and control, or to provide evidentiary support for the counter-assertions in its responses to the Fund's factual statements, as admissions. *See Curtis*, 807 F.3d at 218-19.

The Court finds that two brother-sister controlled groups exist in this case. Two individuals—Thomas and William Edmier—own withdrawing-employer defendant T & W Edmier, as well as non-withdrawing-employer defendants Lake Street Realty and E & E Equipment & Leasing. *See* R. 72 ¶ 5 (prior to its dissolution, T & W Edmier was owned 50% by Thomas and 50% by William Edmier); R. 72 ¶¶ 11, 14, 31 (Lake Street Realty and E & E Equipment & Leasing are owned and controlled by Thomas and William Edmier). Lake Street Realty, E & E Equipment & Leasing, and T & W Edmier thus make up one controlled group.

One individual—Kevin Edmier—owns and controls both withdrawing-employer defendant The E Company and non-withdrawing-employer defendant K. Edmier & Sons. R. 71 at 3 (defendants admit that "The E Company is owned by Kevin Edmier"); R. 72 ¶ 16 (Kevin Edmier is president of The E Company); (R. 71 at 3 & R. 72 ¶¶ 17, 26 ("Kevin Edmier is the only member" and shareholder of

14

defendant "K. Edmier & Sons, LLC"). The E Company and K. Edmier & Sons thus make up another brother-sister controlled group.

Edmier Corp. does not appear to be part of either controlled group because William Edmier owns all of it (*see* R. 72 ¶¶ 18, 25), and William Edmier does not own 80% of either T & W Edmier or The E Company. *See Wolk*, 2001 WL 301145, at *4 ("a person's stock ownership is not taken into account for purposes of the 80% control test unless that person owns stock in each corporation of the putative brother-sister group"); 26 C.F.R. § 1.414(c)-2 (Example 4). But, as set forth above, the Court finds that Edmier Corp. has forfeited its right to contest controlled group membership because it was named on the notice of withdrawal liability and notice of default.

Defendants further argue that these entities' activities need to have an economic nexus in order for them to be under common control. As defendants themselves acknowledge (R. 71 at 11), however, the Seventh Circuit has expressly rejected this argument. The Seventh Circuit held in *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001), and "confirmed" in *Central States, S.E. & S.W. Areas Pension Fund v. White*, 258 F.3d 636, 641 (7th Cir. 2001), that "no such nexus is required in order to impose liability." *Fulkerson*, 258 F.3d at 641.

**Individual and trust defendants.** Individual defendants Thomas and William Edmier own 100% of withdrawing-employer defendant T & W Edmier, and Thomas and William Edmier, individually and as trustees of the William Edmier

15

Trust, own 100% of their rental activity associated with the property at 249 W. Lake Street, Elmhurst, Illinois. R. 72 ¶¶ 9-10, 29. This means that the leasing trade or business of Thomas and William Edmier and the William Edmier Trust is under "common control" with the trade and business of T & W Edmier as part of the T & W Edmier controlled group. *See, e.g.*, *White*, 258 F.3d at 641 ("all of the stock of Jones Transfer, the entity incurring withdrawal liability, was owned by Trans Jones, 93.53% of the stock of which was owned by Mr. White," and "[s]ince the Whites owned 100% of their garage rental activity (*i.e.*, their home), the leasing activity and the Trans Jones Companies are under 'common control'"); *Cent. States Se. & Sw. Areas Pension Fund v. Miller*, 868 F. Supp. 995, 1000 (N.D. Ill. 1994) (brother-sister controlled group provision satisfied where couple "at the time they leased the house, had 100 percent ownership of Miller Brothers," and "also had 100 percent ownership of the real estate enterprise").

\*   \*   \*

As trades or businesses under common control with one of the withdrawing-employer defendants, the Court finds that all defendants (except Edmier Corp., which was sent notice and has forfeited any controlled group challenge) satisfy the *Groetzinger* test. This means that "notice to one member of a controlled group [wa]s notice to all." *Slotky*, 956 F.2d at 1375. It means that these defendants have "waived the issues that are reserved for arbitration," *id.* at 1373, including arguments about ability to pay and sufficiency of notice set forth in their supplemental memorandum

16

(R. 92). And it means that defendants are jointly and severally liable. *See, e.g.*, *Messina*, 706 F.3d 878.

The Court therefore grants the Fund's motion for summary judgment. R. 47. Under ERISA, defendants are jointly and severally liable not only for the full amount of withdrawal liability ($640,900), but also interest, liquidated damages, attorneys' fees, and costs.[6]

**Conclusion**

For the foregoing reasons, the Court: (1) grants the Fund's motion for summary judgment (R. 47); (2) grants defendants' motion for extension of time to file supplemental briefing (R. 84); and (3) grants in part and denies in part the Fund's motion to strike defendants' supplemental statement of additional facts (R. 93). The Fund should file a petition setting forth its claimed interest, liquidated damages, attorneys' fees, and costs, along with a proposed order, on or before April 20, 2018. Defendants should file a response on or before May 4, 2018.

---

[6] 29 U.S.C. § 1132(g)(2) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant."); *see also Slotky*, 956 F.2d at 1377 (interest, liquidated damages, attorneys' fees, and costs properly added to withdrawal liability under 29 U.S.C. § 1132(g)(2)).

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge


Dated: March 21, 2018