UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 15 C 10323 |
| v. | ) ) | |
| THE E COMPANY, et al., | ) ) | Judge Thomas M. Durkin |
| Defendants. | ) ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Trustees of the Suburban Teamsters of Northern Illinois Pension Fund ("the Fund") sued defendants The E Company, T & W Edmier Corp., Edmier Corp., K. Edmier & Sons, LLC, Thomas W. Edmier, William Edmier, The William Edmier Trust, Lake Street Realty, Inc., and E & E Equipment & Leasing, Inc. ("Defendants") to collect liability incurred under the Employee Retirement Income Security Act of 1974 ("ERISA") after The E Company and T & W Edmier withdrew from the Fund. R. 1. The Court granted the Fund's motion for summary judgment, R. 98, and entered a final judgment that included the Fund's attorneys' fees and costs incurred to date. R. 110. Defendants appealed the Court's summary judgment decision, and the Seventh Circuit affirmed. R. 130. Currently before the Court is the Fund's motion for appellate attorneys' fees and costs. R. 133. For the reasons that follow, the Court grants the Fund's motion and awards the Fund fees in the amount of $62,312.50 and $106.50 in costs.

## Background[1]

This Court granted the Fund's motion for summary judgment on March 22, 2018, finding Defendants—a group of closely-held entities and their individual owners—jointly and severally liable for The E Company and T & W Edmier's ERISA withdrawal liability as controlling group members. R. 98. Having failed to request arbitration as required to dispute liability, the Court held that Defendants waived any issues reserved for arbitration, including, as continues to be relevant here, "any arguments about ability to pay." *Id.* at 16; *see also* 29 U.S.C. § 1401(a)(1); *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 579 (7th Cir. 2011) (an employer's failure to arbitrate means "the employer will have forfeited any defenses [in a subsequent lawsuit by the plan] it could have presented to the arbitrator").

Once the Court awarded the Fund withdrawal liability under ERISA, Defendants became jointly and severally liable not only for the full amount of withdrawal liability, but also interest, liquidated damages, attorneys' fees, and costs. 29 U.S.C. § 1132(g)(2). Indeed, the relevant statute provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall award* the plan—
>
>   (A) the unpaid contributions,
>
>   (B) interest on the unpaid contributions,
>
>   (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher

---

[1] Additional background facts can be found in the Court's March 22, 2018 opinion granting the Fund summary judgment, and the Court's May 9, 2018 order awarding the Fund's final judgment. R. 98; R. 109.

> percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

*Id.* (emphasis added). Accordingly, the Court instructed the Fund to file a petition setting forth its claimed interest, liquidated damages, attorneys' fees and costs, R. 98 at 17, which the Fund did, along with a memorandum proving up damages. R. 99; R. 100. Defendants objected only to the Fund's request for liquidated damages. R. 102; R. 106. On May 9, 2018, the motion fully briefed and considered, the Court awarded the Fund final judgment in the amount of $858,319.52, as follows:

| | |
|---|---|
| Unpaid withdrawal liability | $640,900.00 |
| Interest on unpaid contributions | $ 77,821.52 |
| 10% liquidated damages award, | $ 64,090.00 |
| Attorneys' fees | $ 72,346.13 |
| Costs | $  3,161.87 |
| Total | $858,319.52 |

R. 109; R. 110.

After receiving a check from Defendants in the amount of the final judgment, the Fund filed a "Release (satisfaction) of judgment" ("Release") on the Court's docket, stating:

> Plaintiffs, TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND, having received payment in full of the Judgment entered on May 9, 2018 against all Defendants, jointly, severally and individually, releases the judgment as paid in full.

R. 111.

Defendants then appealed the Court's summary judgment decision, arguing that the Fund's notice of withdrawal liability violated the Fifth Amendment's Due

3

Process Clause. The Seventh Circuit affirmed this Court on January 19, 2019, holding that there was no due process violation. R. 130. The Fund then moved this Court for a supplemental award of its appellate attorneys' fees and costs, again under 29 U.S.C. § 1132(g)(2). R. 133.

As before, Defendants do not object to the reasonableness of the Fund's requested attorneys' fees and costs. R. 136. But Defendants contend that they are not and cannot be obligated to pay any further fees in this case. Defendants make two principal arguments: (1) that corporate owners and officers generally are not personally liable under ERISA and nor can the Edmiers be here, because they are not alter egos of the corporate employers; and (2) the Fund disclaimed any right to further fees in any event when it accepted the final judgment and filed the Release. The Court addresses each argument in turn.

### I. Defendants are Jointly and Severally Liable for the Fees and Costs

Despite the Court's clear ruling on summary judgment, Defendants once again contest joint and several liability in this case, insisting that the individual defendants cannot be held personally liable for any additional recovery by the Fund. The gist of Defendants' argument is that because officers and owners of a corporate employer generally are not held personally liable under ERISA and the Fund has not advanced an alter ego theory that would allow the Court to pierce the corporate veil, the Fund cannot seek fees from the individual defendants here. R. 136 at 2-5.

But Defendants ignore the Court's previous holding that each of the Defendants *are* jointly and severally liable under ERISA—not only with regard to the

full amount of withdrawal liability, but also for interest, liquidated damages, attorneys' fees and costs. R. 98 at 17; 29 U.S.C. § 1132(g)(2). As detailed in the Court's March 22, 2018 summary judgment opinion and in the Seventh Circuit opinion affirming that decision, *Central States Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369 (7th Cir. 1992) and its progeny make clear that in multiemployer pension withdrawal cases such as this, controlling group members are jointly and severally liable along with the withdrawing employer, and individuals can be part of the controlling group for that purpose. *See generally* R. 98 (citing *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prod., LLC*, 706 F.3d 874, 877, 880 (7th Cir. 2013)). Having determined that each Defendant—including the Edmiers—is part of the controlling group, they are jointly and severally liable for the liability at issue, including for fees and costs. *See Trs. of the Suburban Teamsters of N. Ill. Pension Fund v. The E Co.*, 914 F.3d 1037, 1039 (7th Cir. 2019) (the Court's determination that each Defendant was liable under ERISA's controlled group provision "finds strong support in the record").

Defendants nevertheless argue that the Seventh Circuit's opinions in *Plumbers Pension Fund Local 130 v. Niedrich*, 891 F.2d 1297 (7th Cir. 1989), *Levit v. Ingerson Rand Financial Corporation*, 874 F.2d 1186 (7th Cir. 1989) and *Sullivan v. Cox*, 78 F.3d 322 (7th Cir. 1996) bar personal liability of an officer or shareholder unless he or she is "a party to the pension plan or collective bargaining agreement" or facts exist that "warrant[ ] treating the corporation as the alter ego of the individual and piercing the corporate veil." *See* R. 136 at 3 (citing *Niedrich*, 891 F.2d

5

at 1300-01). But those cases are easily distinguished. The Court agrees with the Fund that, in making this argument, Defendants apparently "fail to comprehend that the law regarding pension withdrawal liability was separately legislated from routine Fund delinquency cases [such as *Neidrich*, *Levit* and *Sullivan*] . . . where the control group basis of liability . . . is unavailable." R. 138 at 3. Indeed, none of *Niedrich*, *Levit* or *Sullivan* dealt with either pension withdrawal liability generally or controlling group liability specifically. And nor did these cases concern mandatory arbitration or automatic default for failure to arbitrate. Accordingly, none are applicable here.[2]

Defendants have offered no credible reason to revisit the Court's determination of joint and several liability, and the Court sees no independent reason to do so. Defendants remain jointly and severally liable under 29 U.S.C. § 1132(g)(2) for reasonable additional fees and costs incurred by the Fund as part of the controlling group absent the success of Defendants' relinquishment argument below.

## II. The Fund Did Not Release its Claim for Further Fees

Defendants argue that the Fund waived any right to seek additional attorneys' fees by accepting a check in the amount of the final judgment, signing the Release, and failing to notify Defendants of its intent to seek additional fees and costs once it learned of Defendants' appeal. *See* R. 136 at 5-8. More specifically, Defendants point out the parties' agreement (reflected in an agreed motion and order) that $900,000 in

---

[2] Moreover, while Defendants argue that the Fund has waived any right to assert the alter ego theory here (an argument which, as shown, they need not advance in any event), R. 136 at 5, Defendants decline to acknowledge their own failure to object to the Fund's initial request for attorneys' fees and costs on *any* basis, either in its responses to the Fund's motion for final judgment, or on appeal.

6

proceeds from the sale of the building at 249 West Lake Street in Elmhurst, Illinois (the "Building")—the Edmiers's last remaining business asset—would be escrowed in a trust account and used to satisfy any judgment or settlement of the Fund's claims against Defendants, and that any amount remaining would be returned to Defendants. The Fund then accepted a check drawn from that account with the notation "Full Satisfaction of Judgment, Teamsters v. The E Company, et. al.," and filed the Release with the Court. Defendants contend that in accepting that check and filing the Release, the Fund "unconditionally released the judgment as paid in full." *Id.* at 5-6. Defendants argue further that the Fund's failure to notify Defendants' counsel of its intent to seek appellate fees or otherwise advise Defendants to continue to hold the remaining Building proceeds in the escrow account caused Defendants to believe that they were entitled to those remaining proceeds, not the Fund. *Id.* Accordingly, the sale proceeds now exhausted, Defendants argue that so too is the Fund's right to further fees.

For its part, the Fund argues that it in no way relinquished its right to request additional attorneys' fees and costs on appeal, and that in fact, the disbursement of the Building proceeds in satisfaction of the final judgment has no bearing on its right to further fees. Further, the Fund contends that it is not limited to the Building escrow account—or any other funding source—in any event. The Court agrees.

As noted, the Release provides that the Fund, "having received payment in full of the Judgment entered on May 9, 2018 against all Defendants, jointly, severally and individually, releases the judgment as paid in full." R. 111. By its very terms, the

7

Release unambiguously covers the judgment—as entered by this Court on May 9—but says nothing at all about any future claims, including any eventual appeal.

Nor is the Fund limited to the Building escrow account as a payment source. The agreed motion (and agreed order) relating to that account require only that Defendants set aside $900,000 in Building sale proceeds in trust for the Fund to be "used for the exclusive *purpose* to satisfy or resolve any judgment or settlement that may be entered in [the Fund's] favor." R. 79 (emphasis added); *see also* R. 81 ("Said funds to be used to satisfy any disposition in this case"). *Not*, as Defendants suggest, that the $900,000 in escrow is the exclusive *source* of funds for any such judgment or settlement (or, as most relevant here, appellate fees and costs). It necessarily follows from this and the terms of the Release that the Fund was under no obligation to notify Defendants of its intent to seek appellate fees so that Defendants might preserve the remainder of the Building escrow account for that purpose.[3]

Finally, as the Court has already held, Defendants have waived the issues reserved for arbitration by failing to request it, including any argument about their alleged inability to pay. R. 98 at 16-17. Defendants cannot credibly argue that the Fund has relinquished its right to the fees to which they are entitled. Accordingly, this argument also fails.

---

[3] Any suggestion that a prevailing plaintiff must notify a defendant of its intent to seek statutorily prescribed fees borders on absurd in any event.

**III.     The Fees and Costs Sought are Reasonable**

Having concluded that the Fund is entitled to supplemental fees and costs, the Court next determines whether the fees and costs sought are reasonable. *See* 29 U.S.C. § 1132(g)(2)(D) (providing for "reasonable attorney's fees and costs"). The Fund calculates total additional attorneys' fees and costs from June 6, 2018 to April 18, 2019 of $62,419, attaching attorney affidavits setting forth in detail the work performed and the billing rate for that work (249.25 hours x $250 per hour = $62,312.50 of attorney time, plus $106.50 in costs), as well as the billing records themselves. R. 133, Exs. B-D; R. 138-1, Exs. 8 and 8(A). As noted, Defendants do not take issue with either the hourly rate or the number of additional attorney hours the Fund spent in this case. And the Court reiterates that the $250 hourly rate charged by the Fund's counsel is in line with market rates approved for similar work. *See, e.g., Bd. of Trustees of the Auto. Mechanics' Local No. 701 Union & Indus. Pension Fund v. 6516 Ogden Ave., LLC*, 170 F. Supp. 3d 1179, 1186 (N.D. Ill. 2016) (Dow, J.) ($257 hourly rate reasonable "to recover over $600,000 in unpaid ERISA liability"). The Court also finds the 249.25 hours spent (217.25 on the appeal and 32 on this motion) reasonable in light of the issues involved in this ERISA collective action and the arguments made by Defendants in objecting to the fees motion. Accordingly, the Court grants the Fund's motion in the amount requested pursuant to 29 U.S.C. § 1132(g)(2).

## Conclusion

For the foregoing reasons, the Court grants the Fund's motion for appellate attorneys' fees and costs, and awards the Fund $62,312.50 in attorneys' fees and $106.50 in costs, for which each Defendant is jointly and severally liable.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: May 6, 2019